## 56544. GEORGIA POWER COMPANY v. NIX.

DEEN, Presiding Judge.

This is an action by the appellant for the amount due under a contract between it and appellee Nix, a subdivision developer. The contract in question was executed February 13, 1973, and bound the public utility to install underground residential electric distribution facilities for service to dwellings to be constructed. The parties agreed that the cost of construction would be $13,265, and this figure is not the subject of dispute. Nix was to pay either the difference between that figure and $330 per lot, or the difference between 1.6 times the

annual electrical revenue as determined by an estimate "pursuant to its Sales Bulletin 3-68 as then constituted, the annual electrical revenue to be derived from all dwellings completed and ready for occupancy."

As to the time of payment: Nix agreed in paragraph 5 to cause dwellings to be constructed on the lots in question within 3 years of commencement of constuction of the system by the company. The power company agreed in paragraph 6 to make the estimate under which charges were to be computed "when dwellings are completed on all building lots" but no later than three years from the date of agreement, which latter date would be February 13, 1976. Bulletin 3-68 was revised several times. The latest revision was in May of 1976, and these figures were used in computing the annual electrical revenue. The computation was made in September, 1976, and resulted in a figure of $9,331 as the estimated annual electrical revenue, which, subtracted from the agreed-on cost of $13,265, left $3,934 as the amount due the utility. It is to be observed that the higher the annual revenue figure, the smaller the amount owing by the developer to the utility. There was testimony that there had been a rate increase on which the then current 3-68 Bulletin was predicated, and thus the amount charged by the utility is less than if an earlier bulletin and estimate had been used.

The alternate method of figuring payment was to subtract from the $13,265 the sum of $330 per lot. In September, 1976, only five dwelling houses had actually been built, but the subdivision contained 25 lots, resulting in a figure of $8,250, which, subtracted from the cost of the installation, would have left an amount owing of $5,015.

The $3,934 actually sued for was attacked by Nix on the ground that it was based on an improper estimate of revenue, in that the contract required the estimate to be made on or before February 13, 1976, whereas it was actually made in September of that year and based on an amended bulletin put out in May which, being incorrect, resulted, in a failure on the part of the plaintiff to prove any amount owing. Based on this reasoning the trial judge directed a verdict in favor of the defendant, and

plaintiff appeals. *Held:*

1. "The rule stated in the final sentence of Code Ann. § 81A-150 (a) purports to set forth the standard for a directed verdict long recognized in this state. It is error to direct a verdict unless the evidence demands the particular verdict and fails to disclose any material issue for jury resolution." *Humble Oil &c. Co. v. Mitchell,* 230 Ga. 323, 326 (197 SE2d 126) (1973). "A verdict may only be directed in situations where, if there were a determination the other way, it would have to be set aside by the court." *State Farm Mut. Auto. Ins. Co. v. Snyder,* 125 Ga. App. 352 (187 SE2d 878) (1972).

2. In the present case it is uncontradicted that the appellant performed services for the appellee for which the appellee owed payment, and that no payment was made. Conceding the rule is as stated in *Bank Bldg. &c. Corp. of America v. Ga. State Bank,* 132 Ga. App. 762, 767 (209 SE2d 82) (1974) that a quantum meruit recovery cannot be had in an action on a special contract, this does not mean that, if the utility in fact sued for less than was owing to it, a recovery in the amount sued for would be illegal. It appears from the testimony that there was a rate increase between February and September, 1976, which was reflected in the amended bulletin and which actually resulted in an estimate of greater revenue to the company and therefore less deficit for the defendant to pay on the cost of construction. Therefore, had the jury returned a verdict in the amount sued for this court could not have said the verdict was harmful error as to the defendant.

3. The fact that the utility undertook to make its estimate of cost to the defendant "within three years from the date of this agreement," and that it failed to do so, is no cause for disregarding the estimate as made. If the plaintiff breached paragraph 6 of the agreement by not submitting its estimate and bill for an additional seven months after the three-year period, the defendant developer likewise breached paragraph 5 of the same agreement where it agreed "to cause dwellings to be constructed on the lots in the development within three years from the date Company commences construction of the said underground electric distribution system." Only

five of the 25 lots were built upon. This. extremely low building ratio, which was due to the acts of the defendant, of course threw cost determination into the revenue estimate formula, and there is no evidence that the appellant failed to perform any act it contracted to do in the construction of the system. Allowing the defendant some extra months in which to pay, or billing him for less than he actually owes is not such non-performance as is referred to in *Cleveland v. Schwaemmle,* 96 Ga. App. 724 (101 SE2d 611) (1957), as a defense to the contract.

*The direction of the verdict in favor of the defendant was error. Judgment reversed. Smith and Banke, JJ., concur.*

ARGUED SEPTEMBER 13, 1978 — DECIDED OCTOBER 23, 1978.

*Erwin, Epting, Gibson & McLeod, M. Steven Heath, Henry G. Garrard, III,* for appellant.

*Telford, Stewart & Stephens, Joe K. Telford,* for appellee.